BEAVERS *v.* LeSUEUR *et al.*

No. 12671. JUNE 20, 1939.

*R. J. Bacon,* for plaintiff. *Fort, Fort & Fort,* for defendants.

Bell, Justice. (After stating the foregoing facts.)

■ The first question as stated by counsel for the plaintiff is substantially as follows: Can a lien creditor attack for fraud a transfer of the security conveyed to him by a husband, when the transfer is to the grantor's wife, and imperils the creditor's security? Under the facts of the instant case, this question can not be so answered as to authorize an equitable cancellation of the deed from the defendant LeSueur to his wife. The husband made a deed to the plaintiff, to secure a note for $1650 and all other indebtedness which the grantor might then or thereafter owe to the grantee. This left the husband with an equitable interest in the land, which he could sell and convey to the same extent as other property. *Kidd* v. *Kidd,* 158 *Ga.* 546, 551 (124 S. E. 45). The deed afterwards made by him to Mrs. LeSueur recited a consideration of "$10.00 and good and valuable considerations, in hand paid." The deed was therefore prima facie a contract of sale, and not a voluntary conveyance. *Martin* v. *White,* 115 *Ga.* 866 (42 S. E. 279). Every conveyance of property, by writing or otherwise, is void if it is made with intention to delay or defraud creditors, where such intention is known to the party taking. "A bona fide transaction on a valuable consideration, and without notice or ground for reasonable suspicion, shall be valid." Code, § 28-201 (2). Even if the husband may have intended to delay or defraud the plaintiff as a creditor, yet if the wife was a purchaser, as indicated in the deed, and acted in good faith and without notice or ground for reasonable suspicion, the deed as to her is good. *Rowe* v. *Cole,* 171 *Ga.* 391 (155 S. E. 473); *Hollis* v. *Sales,* 103 *Ga.* 75 (5) (29 S. E. 482). The same is true even though the husband may have been insolvent. *Lydia Pinkham Medicine Co.* v. *Gibbs,* 108 *Ga.* 138 (3) (33 S. E. 945); *McCranie* v. *Cobb,* 174 *Ga.* 370 (162 S. E. 692). In the circumstances here indicated, the deed to the wife appeared to be valid, and there was no imperiling of the plaintiff's security of which he could complain; that is to say, the plaintiff could not impeach the transaction merely because he held the security deed and might have preferred

that the equitable interest remain in his grantor. One who takes a security deed is bound to know that, in the absence of stipulation to the contrary, the grantor will have the right to convey his equity to another, and that such other will in turn have the right to purchase the same, although the conveyance might for some reason be objectionable to the creditor. The mere happening of such transaction would not furnish ground for cancellation. Nor would the case be altered by the fact that the purchaser is the wife of the grantor in the security deed, and the creditor may prefer no "entanglement" with the wife in regard to the indebtedness, she having purchased the property subject thereto.

The first issue of law as stated by counsel apparently assumes that the wife had notice of the husband's intention, and that the mere conveyance to the former imperiled the plaintiff's security. With these improper assumptions eliminated, the first contention of the plaintiff is without substance. If in thus limiting the facts in this division we have misapprehended the exact position of counsel, in that the first contention may have contemplated the additional allegations touching insurance, we think it is still a proper approach to consider first the rights of the parties without reference to insurance. It is our opinion that, apart from the allegations on that subject, the petition failed to state a cause of action for cancellation. In the next division these additional allegations will be considered.

■ The second question is whether the conveyance to Mrs. LeSueur voided the insurance on the house and thereby imperiled the plaintiff's security, and authorized a foreclosure of the security deed. This question is based upon the following allegations: "The said deed is void as to your petitioner and his claims as creditor as aforesaid, but the said LeSueur has sought to entangle your petitioner and estop him from attacking the aforesaid deed as void, by the following ruse: The said LeSueur had the insurance agent make an endorsement for the insurance policy held on the house on said premises, showing the title transferred to Mrs. LeSueur, and on August 25, 1938, handed the said endorsement to your petitioner to place the same upon the policy of insurance which your petitioner held under the terms of the security deed as shown 'Exhibit A' aforesaid. Your petitioner thereupon consulted counsel as to what he should do in the premises, and was advised not to

attach the said endorsement, and he has not attached the said endorsement to the said policy and has not assented or agreed thereto, and herewith tenders the said endorsement into court. Your petitioner thereupon shows that the insurance of the house on said property, which is a material part of the security, is in an uncertain and precarious condition, by reason of the acts of the said defendant as aforesaid." (Original petition, paragraphs 8, 9.) "A change of ownership of property without being noted on an insurance policy in general avoids the policy; and if your petitioner attached said endorsement to this policy, it would admit the change of ownership to Mrs. LeSueur; and if he fails to attach it, the insurance is endangered under the claim that Mrs. LeSueur is now the owner." (First amendment, paragraph 13.) "The insurance policy referred to in this petition is upon the standard forms, and contains the provision: 'This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void —if any change other than by the death of an insured takes place in the interest, title, or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise." (Second amendment, paragraph 23.)

It is our opinion that, under the terms and conditions of the security deed, all the foregoing allegations are immaterial, and that it makes absolutely no difference whether the conveyance to Mrs. LeSueur voided the insurance policy or not. The only provision in the security deed relevant to this question is as follows: "The grantor contracts and agrees to keep all taxes and all other assessments imposed by the laws of the State of Georgia, and all insurance premiums for insurance on the houses thereof, during the time this loan is in existence, paid promptly, and upon the default of the grantor herein to pay such taxes, assessments, insurance, or any of the principal maturing installments of the original debt, or the interest then due, the grantee may pay any such for the grantor, which shall become a part of the original debt and draw interest at the same rate; and grantee shall also have the option to declare the entire debt, including all interest, taxes, assessments, and insurance due thereon; and proceed without delay to collect the same." According to this stipulation, the only obligation of the grantor as related to insurance was that he would keep "all insurance pre-

miums for insurance on the houses thereof, during the time this loan is in existence, paid promptly." Whether or not this provision contemplated that he should carry insurance in some amount, it did not require that he should maintain any insurance payable to *the plaintiff*, and it does not appear that he has wholly failed to carry any insurance whatever, or that he has failed to pay any insurance premium promptly. It may be true that the plaintiff is the holder of a policy of insurance as additional security, but this was not a condition of the security deed; and even if a conveyance of the property might operate to annul this particular policy (Code, § 56-825), this circumstance alone would not constitute a violation of the terms of the security deed. Accordingly, the allegations in reference to insurance did not strengthen the plaintiff's case as related to cancellation. Furthermore, the allegations properly construed would indicate that the defendant and the insurance company were offering to protect the policy in the hands of the plaintiff, even though it was not delivered to him under any obligation contained in the security deed. He could not refuse this offer and then contend that the policy was violated.

■ The next question is whether the terms of the security deed as to securing "all other indebtedness" would embrace the plaintiff's claim of damages for alleged breach of the contract between LeSueur as attorney and the plaintiff as client. The security deed stated in express terms that it was given to secure an indebtedness of $1650 represented by a note, and "any future advances not exceeding $500." After that came the following blanket clause: "This conveyance is also made with the understanding and agreement that it shall operate as security for any and all renewals of the indebtedness herein described, and shall also operate as security for any and all other indebtedness which the grantor herein may now owe or may hereafter owe to grantee, its successors, transferees, and assigns, before the surrender and cancellation of this deed by the grantee, or its or their heirs, successors, or assigns." This language is very broad, and it would be entirely beside the mark to attempt to define its full meaning. It is here presented for construction only upon the question whether it comprehends the particular claim for damages. In the construction of every contract, the main object is to arrive at the intention of the parties; and to this end the meaning of the words must be considered

in the light of all the attendant and surrounding circumstances. Code, §§ 20-702, 20-704 (1). Was any claim of such nature within the intention or contemplation of the parties at the time they agreed upon the foregoing stipulation? We do not think so. The security deed speaks first of a note for $1650, next of future advances, then of renewals, and finally of "all other indebtedness which the grantor herein may now owe or may hereafter owe to grantee." It is a well-recognized rule of construction that when a statute or document enumerates by name several particular things, and concludes with a general term of enlargement, this latter term is to be construed as being ejusdem generis with the things specifically named, unless, of course, there is something to show that a wider sense was intended. *Grier* v. *State,* 103 *Ga.* 428 (30 S. E. 255); *Standard Oil Co.* v. *Swanson,* 121 *Ga.* 412, 415 (49 S. E. 262); *Fleming* v. *Rome,* 130 *Ga.* 383, 386 (61 S. E. 5). In this contract the enumeration preceding the general phrase, "all other indebtedness," evidently embraced as a class only such definite liabilities as were intentionally assumed; and the plaintiff's claim for damages, even if well founded, was not an indebtedness of that kind. Although it may have arisen ex contractu, it was yet contingent and unliquidated; and being predicated upon a charge of negligence, it was not intentionally assumed. Furthermore, according to its natural import this security deed apparently refers only to indebtedness based upon the ordinary dealings of individuals, without reference to any professional or confidential relation.

Negligence or breach of duty is not to be anticipated, but until the contrary is shown it is to be presumed that every man obeys the mandates of the law and performs all of his social and official duties. *Georgia Casualty Co.* v. *McRitchie,* 45 *Ga. App.* 697 (3) (166 S. E. 49). So it could hardly have been contemplated by either party that the plaintiff, in accepting this deed as security for the obligations specifically mentioned, was also taking security for a possible liability for negligence. An attorney might give security for the faithful performance of his professional duty in representing a client in litigation, but any such agreement would be inconsistent with the confidence usually reposed in one so employed, and would be regarded generally as a most exceptional undertaking. If such lack of trust exists, the attorney would hardly

be employed upon any terms. Construing this contract in the light of the circumstances and according to the natural meaning of its language, we are of the opinion that it does not embrace liability of this character. While there seems to be some conflict in the decisions by the various courts as to the application of similar language in particular cases, we have not discovered any decision which is actually contrary to our conclusion in this case, relating as it does to a contingent and unliquidated claim for damages for an alleged breach of a contract made by an attorney in his professional capacity. In support of the conclusion here stated, though not in reference to the relation of attorney and client, see *Citizens First National Bank of Albany* v. *Jones,* 161 *Ga.* 655 (131 S. E. 529, 43 A. L. R. 1059); *Skinner* v. *Elliott,* 17 *Ga. App.* 511 (85 S. E. 759); *Mandeville Mills* v. *Milam,* 39 *Ga. App.* 768 (148 S. E. 418); Gillet *v.* Bank of America, 160 N. Y. 549 (55 N. E. 292); Loyd *v.* Lynchburg National Bank, 86 Va. 690 (11 S. E. 104); First National Bank *v.* Illinois Trust & Saving Bank (C. C.) 84 Fed. 34; Brown *v.* James, 80 Neb. 475 (114 N. W. 591); Terrance *v.* Third National Bank, 127 C. C. A. 356 (210 Fed. 806); Heffner *v.* First National Bank, 311 Pa. 29 (166 Atl. 370, 87 A. L. R. 610). The decisions in *Bank of Cedartown* v. *Holloway-Smith Co.,* 146 *Ga.* 700 (92 S. E. 213), and *Leffler Co.* v. *Lane,* 146 *Ga.* 741, were based upon materially different facts, and are in nowise contrary to the conclusion here reached.

■ The court erred, however, in sustaining the general demurrer. The fact that the note for $1650 was not shown to have matured did not render the petition subject to dismissal on *general* demurrer. This was a matter for special demurrer. *Goodrich* v. *Atlanta National Building & Loan Association,* 96 *Ga.* 803 (22 S. E. 585); *Horne* v. *Rodgers,* 103 *Ga.* 649 (30 S. E. 562).

*Judgment reversed. All the Justices concur.*